UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH H. ALLSUP, JR., | ) | Case No. 3:11CV2210 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| EDWARD T. SHELDON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

Petitioner, Joseph H. Allsup, Jr. ("Petitioner"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his Hardin County, Ohio Court of Common Pleas convictions for felonious assault on a peace officer in violation of Ohio Revised Code ("ORC") §§ 2903.11(A)(2), (D)(1), vandalism in violation of ORC § 2909.05(B)(2), and operating a vehicle while under the influence of alcohol in violation of ORC § 4511.19(A)(1)(a).  ECF Dkt. #7-1 at 114-118[1].

On March 6, 2012, Respondent, Edward T. Shelton, Warden of North Central Correctional Institution, filed an Answer/Return of Writ.  ECF Dkt. #7.  On April 9, 2012, Petitioner filed a Traverse.  ECF Dkt. #8.

Petitioner also filed a motion for default judgment on October 22, 2012.  ECF Dkt. #9.  Respondent filed a brief in opposition to the motion for default judgment.  ECF Dkt. #10.

For the following reasons, the undersigned RECOMMENDS that the Court DENY Petitioner's motion for default judgment (ECF Dkt. #9) and DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

## I.      SYNOPSIS OF THE FACTS

The Third District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

On April 3, 2009, just past midnight, Office Deckling of the Kenton Police Department stopped at Jumpin' Jim's carry-out in Kenton to make a personal purchase while on duty.  Officer Deckling was dressed in the standard-issued police uniform and was driving a marked police cruiser. While Officer Deckling was making his purchase, he recognized another customer as Wayne Allsup ("Wayne") in the carry-out buying beer.  Officer Deckling recalled that there may be an active warrant out for Wayne's arrest. Officer Deckling returned to his police cruiser and radioed a request for dispatch to confirm whether there was indeed an active warrant for Wayne's arrest.

From his cruiser, Officer Deckling observed that Wayne had entered into the passenger side of an older model pick-up truck parked in the parking lot of the carry-out.  The driver of the truck was Wayne's brother, Joseph Allsup, Jr. ("Allsup").  The truck remained parked while Wayne conversed with another man through the passenger side window.

Upon dispatch's confirmation that there was an active warrant for Wayne's arrest, Officer Deckling approached the parked truck on the passenger side and informed Wayne that there was a warrant for his arrest and that he needed to exit the truck.  Wayne then looked at Allsup and said, "Let's go, dude."  Allsup put the truck in reverse and left the parking lot.  Officer Deckling returned to his vehicle and began to follow the pick-up truck with the overhead lights and siren on the cruiser activated.

After pursuing the pick-up truck a mile south of town, Officer Deckling noticed that the truck had stopped in the middle of the road.  Officer Deckling stopped his vehicle approximately fifteen to twenty feet behind the truck. Allsup then put his truck into reverse and rammed Officer Deckling's police cruiser.  The impact of the two vehicles crumpled the hood on the driver's side of the police cruiser and disabled the driver's side headlight.  Officer Deckling suffered an injury to his leg as a result of the collision.  However, Officer Deckling was able to continue the pursuit of Allsup's truck because the impact of the collision failed to totally disable his vehicle.  Officer Deckling radioed dispatch for assistance.  Additional vehicles from both the Kenton Police Department and the Hardin County Sheriff's Office joined the pursuit.

While Officer Deckling followed the truck, Wayne began throwing various items, which included beer bottles, metal objects and a rake, out of the passenger side window in the direction of Officer Deckling's cruiser.  Officer Deckling had to swerve the cruiser to avoid hitting the projectiles.  Further down the road, Sergeant Lee of the Hardin County Sheriff's Office had positioned himself ahead of Allsup's pick-up truck.  As the truck approached

-2-

> Sergeant Lee's location, Sergeant Lee threw out a set of stop sticks to deflate the tires on Allsup's truck.  Once the truck ran over the stop sticks, the passenger side front tire deflated.  However, the truck continued down the road at a high-rate of speed, leaving gouges in the road from the wheel.  Allsup then turned the truck into a residence belonging to one of his cousins and parked the truck.  Law enforcement surrounded the truck and forcibly pulled Allsup and Wayne from the pick-up truck.  Officer Deckling immediately noticed a strong odor of alcohol on Allsup's person and further observed that Allsup had defecated in his pants during the incident.

ECF Dkt. #7-1 at 288-290.

## II.   PROCEDURAL HISTORY

### A.   State Trial Court

In its April 2009 term, the Hardin County, Ohio Grand Jury indicted Petitioner on failure to comply with an order of a police officer in violation of ORC § 2921.331(B), (C)(5)(a)(ii); felonious assault on a peace officer in violation of ORC § 2903.11(A)(2), (D)(1); complicity to vehicular vandalism in violation of ORC §§ 2923.03(A)(2) and 2929.(B)(1)(C); vandalism in violation of ORC § 2909.05(B)(2); driving under suspension or in violation of license restriction in violation of ORC § 4510.11(A); and operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them in violation of ORC § 4511.19(A)(1)(a).  ECF Dkt. #7-1 at 47-48.

On May 15, 2009, counsel for Petitioner made an oral motion to determine Petitioner's competency at arraignment and the trial court granted that motion.  ECF Dkt. #7-1 at 50-51.  On May 18, 1009, Petitioner, through counsel, filed a written plea of not guilty by reason of insanity. ECF Dkt. #7-1 at 54. On July 6, 2009, the Hardin County Court of Common Pleas held a hearing on Petitioner's competency to stand trial and accepted the opinion of the examining consultant who determined that Petitioner was competent to stand trial.  *Id*. at 56-57.  Petitioner's counsel moved the court for a further competency evaluation and filed a written motion for the appointment of an independent medical examiner to evaluate Petitioner's insanity plea and competency to stand trial. *Id*. at 57-59.  The trial court granted the motion and appointed an independent examiner.  *Id*. at 60.

On September 16, 2009, the trial court held another hearing and accepted the opinion of the independent medical examiner that Petitioner was competent to stand trial.  ECF Dkt. #7-1 at 63-64. Petitioner's counsel made a motion, orally and in writing, for a second independent evaluation, but the trial court denied the motion.  *Id.* at 64.

-3-

On October 20, 2009, the trial court granted the State's motion to dismiss the charge of complicity to vehicular vandalism against Petitioner.  ECF Dkt. #7-1 at 65-66.

On November 24, 2009, new counsel for Petitioner filed a document titled "Waiver of Right to Speedy Trial," indicating that Petitioner waived his right to a speedy trial and consented to reassignment of a trial date due to the substitution of defense counsel.  ECF Dkt. #7-1 at 68. On December 30, 2009, Petitioner filed a motion to dismiss the indictment against him due to a violation of his speedy trial rights, asserting that "[a]n extension of time is not sufficient when the Defendant was granted new counsel and counsel unlawfully seeks such extension."  *Id*. at 69-70. Petitioner asserted that he did not give his counsel permission to waive his speedy trial rights.  *Id.* at 70.

On February 17, 2010, Petitioner's new counsel filed a motion for the appointment of a neuro-psychologist and to approach the court ex parte regarding the motion.  ECF Dkt. #7-1 at 79. The trial court held a hearing on the motion and granted the motion in part and reserved ruling in part.  *Id*. at 96-97.  The trial allowed Petitioner's counsel  to have ex parte communication with the neuro-psychologist to determine if further evaluation was necessary.  *Id*.  The trial court further indicated that nothing in its order constituted an extension of Petitioner's time in which to be brought to trial.  *Id*.

On March 16, 2010, the trial court granted the State's motion to dismiss the driving under suspension or in violation of a license restriction charge against Petitioner.  ECF Dkt. #7-1 at 98-100.  The State also filed a motion in limine to exclude testimony and medical records regarding a head injury that Petitioner had suffered a few weeks prior to the incident.  *Id*. Petitioner filed a motion in limine to exclude his brother's jury conviction that was determined a month prior on related offenses.  *Id.*

The trial court held a pretrial on the motions and found that the State could reference the convictions of Petitioner's brother for impeachment purposes, but the State could not go into the specifics of the offenses.  ECF Dkt. #7-1 at 237-238.  The trial court further indicated that it would not instruct the jury on a not guilty by reason of insanity plea and Petitioner could not introduce evidence of his head injury without testifying to the incident and its affect on his conduct on the

night of the offenses.  ECF Dkt. #7-6 at 426-429.

On March 22, 2010, the jury found Petitioner guilty of failure to comply with an order or signal of a police officer, felonious assault on a peace officer, vandalism, and operating a vehicle while under the influence of alcohol.  ECF Dkt. #7-1 at 114-120.  On May 13, 2010, the trial court sentenced Petitioner to three years of imprisonment on the failure to comply conviction, seven years on the felonious assault conviction, six months on the vandalism conviction, and six months on the operating under the influence conviction.  *Id*. at 120-123.  The court ordered the sentences on the failure to comply and the felonious assault convictions to run consecutively, and ran the six-month convictions concurrently with one another but consecutively with the failure to comply and felonious assault convictions, thus resulting in a total sentence of ten years and six months of imprisonment. *Id.* at 122-123.  The court also imposed a five year mandatory post-release control term.  *Id*. at 124.

**B**.     **Direct Appeal**

On June 2, 2010, Petitioner, through trial counsel, filed a notice of appeal and asserted the following assignments of error:

I.     THE TRIAL COURT ERRED WHEN IT EXCLUDED THE TESTIMONY *IN TOTO* OF KATHLEEN THARP, STEVEN RUMER, AND TIM SHOFFER, AND A PORTION OF THE TESTIMONY OF APPELLANT.

II.    THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE JURY INSTRUCTION WITH RESPECT TO THE DEFENSE OF INTOXICATION. [Tr. 450, 479]

III.   THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL [Tr. 307, 396]

IV.    THE TRIAL COURT ERRED WHEN IT DENIED MR. ALLSUP'S MOTION TO EXCLUDE JUROR GRAPPY FOR CAUSE. [Tr. 63, 95-97].

V.     THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE OF TEN YEARS OF IMPRISONMENT. [5/10/10 Tr. 16].

ECF Dkt. #7-1 at 127-162.

On January 31, 2011, the Ohio appellate court affirmed the trial court's judgment and sentence, overruling each of Petitioner's assignments of error.  ECF Dkt. #7-1 at 293-313.

**C**.     **Supreme Court of Ohio**

On March 15, 2011, Petitioner pro se filed a notice of appeal to the Supreme Court of

-5-

Ohio.  ECF Dkt. #7-1 at 315.  In his memorandum in support of jurisdiction, Petitioner pro se asserted the following propositions of law:

Proposition of Law No. I:

The trial court abused its discretion in denying the appellant an opportunity to present a valid defense in violation of due process of law in violation of the United States Constitution Fifth and Fourteenth Amendments and Article I, § 16 of the Ohio Constitution.

Proposition of Law No. II:

The trial court abused its discretion in overruling appellant's objection to the jury instruction with respect to the defense of intoxication, thus denying appellant his right to an impartial jury under the Sixth Amendment of the United States Constitution and Article I, §5 of the Ohio Constitution.

Proposition of Law No. III:

The trial court's conviction against the sufficiency of the evidence violated appellant's rights to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, §16 of the Ohio Constitution.

Proposition of Law No. IV:

The trial court erred when it denied appellant's motion to exclude Juror Grappy for cause, thus denying appellant his right to an impartial jury under the Sixth Amendment of the United States Constitution and Article I, §5 of the Ohio Constitution.

Proposition of Law No. V:

The ineffective assistance of appellant's trial and appellate counsel violated appellant's right to assistance of counsel under the Sixth Amendment of the United States Constitution and Article 1, §10 of the Ohio Constitution.

Proposition of Law No. VI:

The trial court abused its discretion in giving appellant consecutive sentences when there is no statutory authority for the court to do so violating appellant's right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 16 of the Ohio Constitution.

ECF Dkt. #7-1 at 318.  On June 8, 2011, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

*Id*. at 361.

### III.      28 U.S.C. § 2254 PETITION

On October 17, 2011, Petitioner pro se filed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

GROUND ONE:

The Trial Court erred when it imposed the same term of imprisonment that it had imposed on Petitioner's brother Wayne Allsup, due [] the lengthy criminal record of the Petitioner's brother.  Further, that despite differing complicity within the offense, as charged, the standard and allocution of the court did not meet the standing requirements of R.C. §§ 2929.11(A)(B).

Supporting Facts: The petitioner contends that he should not be sentenced as an offender having a serious criminal record.  His record, exclusive of, the instant offense has no criminal record to speak of, thus, not warranting such a sentence which violated the requirements of R.C. § 2929.11(B).

GROUND TWO:

Petitioner asserts the the[sic] trial court erred when it denied his request to remove juror Grappy for cause, which required Allsup to use a preemptory[sic] challenge to remove Mr. Grappy from the jury pool.  The Petitioner argued that Mr. Grappy should have been disqualified because he routinely works with law enforcement as a State of Ohio employee in the fraud department of the Bureau of Worker's Compensation.

The matter of having a law enforcement official upon a jury causes there to be a significant problem with the appearance of bias within the proceedings.  Petitioner asserts that due [sic] his close-working relationship with the law enforcement community his []was unduly biased by the way the trial court handled the matter.

GROUND THREE:

The Petitioner asserts that the trial court erred when it denied his motion for acquittal.  The Petitioner maintains that the prosecution did not present sufficient evidence to establish his guilty[sic] beyond a reasonable doubt on the charge of felonious assault of a peace officer.

In effect, the lower courts chose not to review the record for sufficiency.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  The Petitioner asserts that this did not take place while under State court review.

*Id.* at 2-3.  On March 6, 2012, Respondent filed an Answer/Return of Writ.  ECF Dkt. #7.

On April 9, 2012, Petitioner filed a Traverse  ECF Dkt. #8.

On October 22, 2012, Petitioner filed a motion for default judgment against Respondent.  ECF Dkt. #9.  On October 23, 2012, Respondent filed a brief in opposition to

the motion for default judgment. ECF Dkt. #10.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not currently at issue in this case.

### B.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

-8-

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

-9-

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## **V**.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law,

-10-

as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.     Decisions of lower federal courts may not be considered.

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

-11-

3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a

-12-

reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.    ANALYSIS

Before addressing the Grounds for Relief that Petitioner presents before this Court in his federal habeas corpus petition, the undersigned must address numerous issues presented by Petitioner in his Traverse.  ECF Dkt. #8.

### A.    ISSUES AND CHALLENGES PRESENTED IN PETITIONER'S TRAVERSE

#### 1.    Additional Grounds for Relief

In his nineteen-page Traverse, Petitioner presents a number of issues that could be construed as raising additional Grounds for Relief before this Court.  For instance, on page one of his Traverse, Petitioner asserts that he is challenging the factual background portion of Respondent's Return of Writ, but he raises what appear to be additional Grounds for Relief.  He asserts that "his federal and state constitutional rights to be free from unreasonable searches and seizures" were violated (ECF Dkt. #8 at 948), "his right to a speedy and public trial under Amendment VI of the United States Constition was violated when he did not have a preliminary hearing in a timely manner" (ECF Dkt. #8 at 950), his "due process and equal protection under the law rights was[sic] violated by the State's refusal to provide indigent defendant with a copy of the transcripts for his previous appeals" (ECF Dkt. #8 at 952), the trial court's alleged abuse of "his judicial discretion by failing to recognize that Allsup had cognitive deficits that would affect his competency to stand trial" (ECF Dkt. #8 at 953), Petitioner's "breakdown in communication with his newly appointed counsel" (ECF Dkt. #8 at 953), "due process right and protection from Amendment VIII cruel and unusual punishment was denied Allsup by the State's continual refusal to provide Allsup with medical care for his previous head injury" (ECF Dkt. #8 at 954), Petitioner's allegations of numerous instances of ineffective assistance of trial counsel, (ECF Dkt.

-13-

#8 at 955-956, 962-964), perjured testimony (ECF Dkt. #8 at 958), violation of due process by witness who testified that he did not administer field sobriety tests "because it was kind of a worthless point" (ECF Dkt. #8 at 958), violation of separation of witnesses which allegedly violated his right to a fair trial (ECF Dkt. #8 at 959), alleged trial court abuse of discretion and violation of Petitioner's "Amendment right to have a fair trial by limiting his reference to his previous head injury that was essential to his defense in this case" (ECF Dkt. #8 at 956), trial court bias because judge previously served as prosecutor in a case against Petitioner in municipal court where Petitioner won the case as "this bias prevented Allsup from having a fair trial under the due process and equal protection clauses of Amendment XIV" (ECF Dkt. #8 at 956), and various assertions of prosecutorial misconduct (ECF Dkt. #8 at 955, 960-964).

The undersigned recommends that the Court reject any attempt by Petitioner to raise these issues as new grounds for relief.  Alleged violations of federal constitutional rights which are first presented in a traverse, rather than in a petitioner's federal habeas corpus petition, are not properly before the Court, and the Court need not consider them. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir.2005)("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."), cert. denied, 547 U.S. 1074, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006) (citing cases); *Jenkins v. Welch*, No. 4:09CV637, 2010 WL 1948297, at *15 (N.D.Ohio Apr.26, 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 889 (S.D.Ohio 2008).  Moreover, allowing these grounds for relief first raised in Petitioner's Traverse would deny Respondent an opportunity to address them.

## **2**.   **Challenges to State Court Transcripts provided by Respondent as Exhibits to his Return of Writ**

Petitioner also objects to many of the state court motions filed in his criminal case and to the transcripts of the state court proceedings submitted by Respondent as exhibits to his Return of Writ.  ECF Dkt. #8 at 948-963.  He even challenges the qualifications and objectivity of the jurors who deliberated on his case. *Id.* at 956–957.  To the extent that Petitioner attempts to

presents these issues as new Grounds for Relief for the instant federal habeas corpus petition, the undersigned recommends that the Court deny such an attempt as explained in the preceding section.  As to presenting said objections as challenges to the testimony and transcripts as evidence used to convict him, the undersigned shall address this issue in Petitioner's sufficiency of the evidence Ground for Relief.  If Petitioner is attempting to object to Respondent providing a copy of the lower court indictment or the transcripts of proceedings merely because they are not signed by the appropriate official, the Court should deny this assertion as well.

In his brief before the Ohio appellate court, Petitioner references the indictment and the very transcripts to which he objects in this case.  ECF Dkt. #7-1 at 142.  He indicated in his appellate brief that two volumes of transcripts exist, the first containing transcripts for five of the pretrial hearings in his criminal case, and the second containing transcripts of the trial and sentencing hearings.  *Id*.  He presented no challenge to a lack of court reporter signature or any other challenge to any of the transcripts that he referenced, which are the same transcripts provided by Respondent as exhibits to his Return of Writ.  ECF Dkt. #7 at 45 (Respondent indicates in his conclusion to Return of Writ that "[t]he transcript of the record at trial, pretrial hearings, and the sentencing hearing are all also attached.")  Throughout his appellate brief, Petitioner also refers to the pages of the very indictment and transcripts that he challenges in the instant case.  *Id*. at 143-161. Moreover, Petitioner presented no objection to the court documents and transcripts in his appeal to the Supreme Court of Ohio.  ECF Dkt. #7-1 at 318.  In addition, Petitioner did not challenge the qualifications or objectivity of the jurors that he complains about in his Traverse.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's objections to the state court records provided by Respondent as exhibits to his Return of Writ.

**B.      GROUND FOR RELIEF NUMBER ONE**

In Ground for Relief Number 1, Petitioner contends that the trial court committed error under Ohio law by sentencing him to the same term of imprisonment as his brother even though he had "no

criminal record to speak of" while his brother had a lengthy criminal record.  ECF Dkt. #1 at 2.  He further asserts that the trial court's sentencing and allocution did not meet the standards of Ohio Revised Code § 2929.11(A) and (B).

### 1.    Noncognizability

Respondent contends that the issues in this Ground for Relief are not cognizable in federal habeas corpus because there is no federal constitutional right to appeal the length of a sentence.  ECF Dkt. #7 at 28, citing *United States v. Nation*, 352 F.3d 1075, 1076-1077 (6th Cir. 2003).  In his Traverse, Petitioner asserts that sentencing issues are cognizable in federal habeas corpus review when the Ohio sentencing law violated the United States Constitution.  ECF Dkt. #8 at 964.  He cites *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 717 (2009) and *State v. Foster*, in support.  *Id.*

The undersigned recommends that the Court find that this Ground for Relief is not cognizable in federal habeas corpus.  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action. *Howard v. White,* No. 03–1042, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003); *Kipen v. Renico*, No. 02–1742, 2003 WL 21130033 (6th Cir. May 14, 2003); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (citing cases) (federal court cannot review state's alleged failure to adhere to sentencing procedures).  Accordingly, this Court can consider an alleged state court sentencing error only if it violates a petitioner's federal constitutional right to due process or equal protection.  *Pulley*, 465 U.S. at 42.

2.    **Procedural Default**

Even if this Ground for Relief were cognizable before this Court, the undersigned recommends that the Court find that it is procedurally defaulted because Petitioner failed to present this assertion to the Ohio Supreme Court. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Further, a failure to present a federal habeas claim to a state's highest court for discretionary review, when that review is part of the ordinary appellate review procedure, results in a procedural default of that claim. *Id*. at 847-848.

In his direct appeal to the Third District Court of Appeals, Petitioner asserted the following assignment of error in his appellant brief relating to the instant Ground for Relief:

> IV.    THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE OF TEN
> YEARS OF IMPRISONMENT. [5/10/10 TR. 16].

> ISSUE PRESENTED FOR REVIEW

> For purposes of R.C. 2929.11(B), a sentence is inconsistent when the court
> imposes the same sentence upon co-defendants, even though one co-
> defendant has an extensive felony record and the other defendant has no
> felony record.

ECF Dkt. #7-1 at 137-138, 160.  Petitioner discusses the felony record of his brother in his assignment of error and discusses an alleged violation of Ohio law when the trial court sentenced him to the same sentence as his brother. *Id.* at 160-161.

However, before the Supreme Court of Ohio, Petitioner's only proposition of law relating to sentencing concerned alleged trial court error in imposing consecutive sentences.  ECF Dkt. #7-1 at 328-331.  Petitioner raised the following proposition of law in his memorandum in support of jurisdiction:

> Proposition of Law No. VI: The trial court abused its discretion in giving appellant
> consecutive sentences when there is no statutory authority for the court to do so
> violating appellant's right to due process of law under the Fifth and Fourteenth
> Amendments of the United States Constitution and Article I, §16 of the Ohio
> Constitution.

-17-

*Id.* at 318. In addressing this proposition of law, Petitioner fails to mention any alleged trial court error in imposing the same term of imprisonment upon him that his brother had received despite the difference in criminal records. *Id.* at 328-333. In fact, before the Supreme Court of Ohio, Petitioner does not even mention Ohio Revised Code § 2929.11(B), the statute upon which he bases most of his first ground for relief before this Court. *Id.*

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief presented before this Court relating to this sentencing issue because he failed to present it to the Supreme Court of Ohio. Petitioner can escape this procedural bar if he presents cause to excuse his failure to present these claims to the Supreme Court of Ohio and prejudice arising therefrom, or that a fundamental miscarriage of justice will result from failing to review the claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 3. Cause and Prejudice/Fundamental Miscarriage of Justice

The Court may excuse Petitioner's procedural default if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. However, Petitioner asserts no basis of cause for failing to raise these claims or prejudice resulting therefrom and he fails to assert a fundamental miscarriage of justice.

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground for Relief Number 1 to the extent that he asserts that the trial court committed federal constitutional error in imposing the same or similar sentence upon him that had been imposed upon his brother.

### C. GROUND FOR RELIEF NUMBER TWO

In his second Ground for Relief before this Court, Petitioner asserts that the trial court erred when it denied his request to remove a juror for cause, which required him to use a peremptory challenge in order to remove him. ECF Dkt. #1 at 2-3. Petitioner contends that this juror should have been disqualified from the jury pool because he was a "State of Ohio

-18-

employee in the fraud department of the Bureau of Worker's Compensation," which meant that he "routinely works with law enforcement." *Id.* at 2.

The undersigned recommends that the Court reject Petitioner's assertion of federal constitutional error because he was forced to use a peremptory challenge to remove the juror. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.*" Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)("We have long recognized that peremptory challenges are not of constitutional dimension."); *see also Rivera v. Illinois*, 556 U.S. 148, 157, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009)("this Court has consistently held that there is no freestanding constitutional right to peremptory challenges.")(citations omitted). "When States provide peremptory challenges (as all do in some form), they confer a benefit 'beyond the minimum requirements of fair [jury] selection' *Frazier v. United States*, 335 U.S. 497, 506, 69 S.Ct. 201, 93 L.Ed.187 (1948), and thus retain discretion to design and implement their own systems, *Ross*, 487 U.S., at 89, 108 S.Ct. 2273." *Rivera*, 556 U.S. at 157-158. Since peremptory challenges are state-created and implemented, "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 158.

As to alleged trial court error in denying the challenge for cause of the particular juror in question, such decisions are subject to the presumption of correctness of § 2254. *Wainwright v. Witt*, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)(jurors who stated that they could not recommend the death penalty were properly excused for cause). Therefore, this Court's review of the trial court's determination is "deferential, respecting the trial judge's proximity to the venire and the determinations of credibility and demeanor that voir dire involves.*" Wolfe v. Brigano*, 232 F.3d 499, 502 (6th Cir. 2000), citing *Wainwright*, 469 U.S. at 428. In determining whether a trial court's denial of a challenge for cause constitutes error, this Court asks "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of

impartiality have been believed?" *Patten v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, (1984).

The Ohio appellate court addressed this issue in Petitioner's appeal, finding the following:

> In his fourth assignment of error, Allsup contends that the trial court erred when it denied his request to remove Juror Grappy for cause, which required Allsup to use a peremptory challenge to remove Mr. Grappy from the jury pool. Allsup argues that Mr. Grappy should have been removed for cause because he routinely worked with law enforcement as a State of Ohio employee in the fraud department of the Bureau of Worker's Compensation. Mr. Grappy explained that he analyzed computers seized by law enforcement through search warrants or in the general course of criminal investigations related to worker's compensation fraud. Specifically, Mr. Grappy's job consisted of retrieving files from computers involved in the fraud investigations. Allsup maintains that due to the nature of Mr. Grappy's employment, the trial court's failure to excuse Mr. Grappy as a prospective juror constituted reversible error.

> A prospective juror may be challenged for cause if there is a demonstration of bias toward the defendant. Crim. R. 24(C)(9); R.C. 2945.25(B). "[T]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169 (559 N.E.2d 1301. This is so because a trial court is in the best position to assess the potential juror's credibility. Accordingly, the trial court's determination will be affirmed absent a showing that the court's attitude is arbitrary, unreasonable, or unconscionable. *Id.*

> Initially, we note that there is nothing in R.C. 2945.25 or Crim. R. 24 to suggest that a person, by virtue of his employment with the State of Ohio, is automatically precluded from serving on a jury in a criminal case. Rather, it has been held that "[w]here actual bias is lacking * * * a state employee is not disqualified from serving on a jury in a criminal case." *State v. Pottersnak*, 7th Dist. No. 00-JE-19, 2001-Ohio-3311, *4, quoting *State v. Sims*, (1969), 20 Ohio App.2d 329, 332. See, also, *State v. Stockton* (May 5, 1997), 3rd Dist. NO. 17-96-15 (finding that, absent a showing of actual bias, the trial court did not err in denying defendant's challenge for cause to a jury who was a county probation officer).

> The proper test to determine a juror's bias is "whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality * * * ." *State v. Warner* (1990), 55 Ohio St.3d 31, 47, 564 N.E.2d 18. Moreover, "[t]he affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of a juror as will raise the presumption of partiality, the juror need not necessarily be set aside. * * * ." *Id.* at 47.

-20-

> During voir dire, Mr. Grappy stated that he routinely worked with law enforcement in his capacity as a computer analyst in Worker's Compensation fraud investigations. However, the majority of law enforcement members who Mr. Grappy worked with were either located in Lima or Columbus. Mr. Grappy also stated that he had not worked with any of the law enforcement personnel involved in Allsup's case. Mr. Grappy affirmed that his employment with the State of Ohio would not affect his ability to be a fair and impartial juror. Defense counsel then ceased to inquire any further about Mr. Grappy's qualifications as a prospective juror on the record. In raising his objection to the trial court's decision not to excuse Mr. Grappy for cause, defense counsel indicated that Mr. Grappy's employment with the State of Ohio presented a conflict.
>
> After reviewing the record before us, we believe that Allsup failed to establish that Mr. Grappy had an opinion which raised a presumption of partiality. The simple fact that Mr. Grappy is an employee of the State of Ohio, without more, does not demonstrate that he harbored bias against Allsup and that he could not be a fair and impartial juror in this case. Accordingly, we find that the trial court did not abuse its discretion when it denied Allsup's request to remove Mr. Grappy for cause.

ECF Dkt. #7-1 at 308-311.

Based upon the Ohio Court of Appeals' decision and the record before it, the undersigned recommends that the Court find that the appellate court opinion did not contradict or contravene § 2254(d)(1) or (2).

### D.    **GROUND FOR RELIEF NUMBER THREE**

In his third Ground for Relief, Petitioner asserts that the trial court erred in denying his motion for acquittal. ECF Dkt. #1 at 3. He contends that insufficient evidence existed with which to find him guilty of the felonious assault on a peace officer. *Id.*

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). On federal habeas corpus review, the District Court cannot weigh the credibility of the witnesses. *Walker v. Engle*, 703 F.2d 959, 969. Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), *and Walker,* 703 F.2d at

-21-

969.  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. The inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  Moreover, in determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson.  See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.

Petitioner first asserts that the lower courts in his case did not conduct a sufficiency of the evidence analysis.  ECF Dkt. #1 at 3.  However, the Ohio appellate court did indeed conduct such an analysis when it addressed Petitioner's sufficiency of the evidence argument that he presented in his third assignment of error on appeal.  ECF Dkt. #7-1 at 302-308.  The Ohio appellate court outlined the pertinent state law and evidence and reasonably concluded that sufficient evidence was presented to prove that Petitioner was guilty beyond a reasonable doubt of committing felonious assault on a peace officer.  *Id.*

The Ohio appellate court specifically addressed the issues that Petitioner raises here of whether the prosecution presented sufficient evidence that he used his truck as a deadly weapon and whether the officer suffered physical harm as required by the applicable Ohio

-22-

statutes. In overruling Petitioner's assignment of error, the Ohio appellate court held:

> In his third assignment of error, Allsup argues that the trial court erred when it denied his motion for acquittal. Allsup maintains that the prosecution did not present sufficient evidence to establish his guilt beyond a reasonable doubt on the charge of felonious assault of a peace officer under R.C. 2903.11(A)(2). Specifically, Allsup contends that the prosecution failed to demonstrate that he used the pick-up truck in such a manner to constitute a deadly weapon as defined in R.C. 2923.11(A).

> When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶¶47, 827 N.E.2d 285, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

> On appeal, Allsup only contends that his conviction for felonious assault on a police officer was not supported by sufficient evidence. Specifically, Allsup challenges the adequacy of the prosecution's evidence with regard to the element of the offense requiring the use of a deadly weapon. Allsup was charged under R.C. 2903.11(A)(2), (D)(1) which provides, in pertinent part:

> **(A) No person shall knowingly do * * * the following:**

> **(2) Cause or attempt to cause physical harm to another * * *by means of a deadly weapon* * *.**

> **(D)(1)(a) Whoever violates this section is guilty of felonious assault. * * * If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree.**

> (Emphasis added).

> One "acts knowingly, regardless of his purpose, when he aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Physical harm to persons is statutorily defined as "any injury, illness, or other physiological impairment, *regardless of its gravity or duration*." R.C. 2901.01(A)(3) (Emphasis added). We further note that the offense does not require the offender to inflict serious physical harm in order to be found guilty of the offense. In addition, a deadly weapon includes "any instrument, device, or thing capable of inflicting death,

-23-

*and* designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A) (Emphasis added).

It is well established that an automobile may be used as a deadly weapon for the purposes of R.C. 2923.11(A). See *State v. Gibson*, 9th Dist. No. 23881, 2008-Ohio-410, ¶14 citing *Gaydash v. Gaydash*, 168 Ohio App. 3d 418, 860 N.E.2d 789, 2006-Ohio-4080, ¶16. "In determining whether an automobile is a deadly weapon, a court should not only consider the intent and the mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily harm." *State v. Upham* (May 12, 1997), 12th Dist. No. CA96-08-157, *2. The determination of whether an automobile is used as a deadly weapon is a question of fact for the trier of fact. *Id.*

At trial, Officer Deckling testified that he was pursuing Allsup's truck southbound on Route 31 when the pick-up truck came to a stop in the middle of the road, straddling the yellow line. Officer Deckling stopped his cruiser approximately fifteen to twenty feet behind Allsup's truck. Officer Deckling testified that he was concerned about Allsup and Wayne attempting to jump out of the truck and run. The next thing Officer Deckling observed was the reverse lights illuminate on Allsup's truck. At that point, Allsup reversed his truck and rammed it into the front driver's side of Officer Deckling's cruiser. Officer Deckling recalled that the impact of the two vehicles crumpled the hood on the driver's side and disabled the driver's side headlight. Officer Deckling suffered injury when the force of the collision caused the dash of the cruiser to slam into his right shin. Officer Deckling remembered that he immediately reported the ramming of his vehicle by Allsup's truck over the police radio.

The ramming incident was not captured by the dash camera in Officer Deckling's cruiser because the video card was full, and had not been cleared prior to his shift. However, the testimony of other law enforcement personnel at trial corroborated Officer Deckling's account of the ramming because they overhead[sic] Officer Deckling report the ramming over the police radio. The prosecution submitted photographs of the damage done to Officer Deckling's cruiser and pieces of the front bumper that were picked up off the road where the ramming had occurred. It is clear from the pictures that the majority of the damage to the front of the cruiser occurred where the driver, Officer Deckling, was situated. In total, the damage to the cruiser cost $3,166.16 to repair.

Allsup argues that this evidence was insufficient to demonstrate that he used the truck as a deadly weapon. Rather, Allsup maintains on appeal that he merely used his vehicle to disable the police cruiser and not to inflict injury on Officer Deckling. Notably, with regard to this assertion, Allsup testified at trial that he could not recall the events of that night due to his "lapses in memory," and did not provide any testimony to support his contention on appeal. Nevertheless, Allsup contends on appeal that the manner in which he used his vehicle failed to rise to the level of use as a deadly weapon because his truck hit Officer's Deckling's cruiser at a low-rate of speed. Allsup maintains that if he meant to injure Officer Deckling, he would have hit the police cruiser with a greater rate of speed.

In making this argument, Allsup misconstrues the statutory definition of what constitutes a deadly weapon. Allsup acknowledges that an automobile is a thing that is capable of inflicting death satisfying the first requirement of R.C. 2923.11(A). However, to satisfy the second requirement of R.C. 2923.11(A) the automobile merely needs to be "used as a *weapon*," not as Allsup appears to contend that it must be used as a *deadly* weapon. (Emphasis added). Moreover, other courts have found that there was sufficient evidence to establish the commission of felonious assault with a deadly weapon under R.C. 2903.11(A)(2) when the defendant used a car to ram the victim's vehicle while the victim was positioned inside. See *State v. Gibson*, 9th Dist No. 23881, 2008-Ohio-410, *5; *State v. Tortarella*, 11th Dist No. 2002-L-147, 2004-Ohio -1175, ¶65; *In re B.B.*, 8th Dist No. 81948, 2003-Ohio-5920, ¶17.

Accordingly, we conclude that after viewing this evidence, in a light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Allsup knowingly attempted to cause, and did cause, physical harm to Officer Deckling by means of his truck, a thing capable of inflicting death and used, in this instance, as a weapon. Moreover, there has been no dispute that Officer Deckling was a uniformed member of the City of Kenton Police Department on active duty on the morning of April 3, 2009 providing sufficient evidence to support the peace officer element of the charge. Based on the foregoing, we conclude that the prosecution presented sufficient evidence to establish Allsup committed felonious assault against Officer Deckling in this case. [footnote omitted].

Allsup's third assignment of error is, therefore, overruled.

ECF Dkt. #7-1 at 302-308.

Petitioner complains that convicting him for felonious assault on a peace officer under Ohio Revised Code §2901.01(A)(3)'s definition of physical harm "would be to stretch this meaning beyond what reasonable minds or jurors usually define as physical harm." ECF Dkt. #8 at 965.  He further laments that "[t]o say that Allsup employed 'Deadly force' as defined by R.C. 2901.01(A)(2) as, '...any force that carries a substantial risk that it will proximately result in the death of any person,' is also a stretching of this definition beyond what any reasonable minded juror could infer."  *Id*. at 966.

Based upon a review of the trial transcript, as recited by the Ohio appellate court, the undersigned recommends that the Court find that the Ohio appellate court's decision is supported in the record and sufficient evidence was presented to establish that Petitioner used

his truck as a deadly weapon and Officer Deckling suffered physical harm as required to convict him of the felonious assault of a peace officer. The Ohio appellate court cited to the appropriate Ohio statute for felonious assault on a peace officer and the statutes that defined physical harm and deadly weapon as used in that statute. ECF Dkt. #7-1 at 303-304. Evidence was presented such that a rational trier of fact could find that Petitioner used his truck as a deadly weapon under the statutory definition. A deadly weapon under Ohio law includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon," Ohio Revised Code. § 2923.11(A), and testimony at trial established that Petitioner and his brother were in pursuit by Officer Deckling when Petitioner stopped his truck in the middle of the road, Officer Deckling pulled his cruiser fifteen to twenty feet behind the truck, and Petitioner put his truck in reverse and rammed his truck backward into Officer Deckling's cruiser while Officer Deckling was inside the cruiser. ECF Dkt. 7-1 at 305-306; ECF Dkt. #7-7 at 582-613. As found by the appellate court, Ohio law holds that an automobile may be used as a deadly weapon for purposes of the definitional statute and Ohio caselaw has found that sufficient evidence was presented to establish felonious assault with a deadly weapon under Ohio Revised Code section 2903.11(A)(2) when the defendant used a car to ram a victim's vehicle while the victim was inside of the vehicle. ECF Dkt. #7-1 at 304-305, citing *State v. Gibson*, No. 23881, 2008 WL 315591, 2008-Ohio-410, at *5 (Ohio App. Ct. Feb. 6, 2008), unpublished; *State v. Tortarella*, No. 2002-L-147, 2004 WL 473382, 2004-Ohio -1175, ¶65 (Ohio App. Ct. Mar. 12, 2004), unpublished; *In re B.B.*, No. 81948, 2003 WL 22510518, 2003-Ohio-5920, ¶17 (Ohio App. Ct. Nov. 6, 2003), unpublished; and quoting *State v. Upham*, No. CA96-08-157, 1997 WL 249453, at *2 (Ohio Ct. App. May 12, 1997).

As to physical harm, sufficient evidence was also presented that Officer Deckling suffered physical harm as defined in Ohio Revised Code section 2901.01(A)(3). As quoted by the Ohio appellate court, the statutory definition of physical harm does not require serious physical harm and includes "any injury...regardless of its gravity or duration." ECF Dkt. #7-1

at 304 , quoting Ohio Rev. Code § 2901.01(A)(3).  The appellate court noted that Officer Deckling testified about damage to the cruiser and resulting injury to his right shin when the dash of the cruiser slammed into it.  ECF Dkt. #7-1 at 305.  Officer Deckling testified at trial that he suffered an injury to his right shin as a result of impact from Petitioner's truck hitting his cruiser and the dashboard smashing into his shin.  ECF Dkt. #7-7 at 611.  A photograph of the injury to Officer Deckling's shin was also presented to the jury.  *Id.*

For these reasons, the undersigned recommends that the Court find that a rational trier of fact could find that Petitioner's truck was an instrument or thing capable of inflicting death and Petitioner used his truck as a weapon, thus satisfying the definition of a deadly weapon under Ohio Revised Code section 2923.11(A).  The undersigned also recommends that the Court find that sufficient evidence was presented at trial for a rational juror to conclude that Officer Deckling suffered a physical harm that met the definition in Ohio Revised Code section 2901.01(A)(3).  Accordingly, the undersigned recommends that the Court find that sufficient evidence existed to find Petitioner guilty of felonious assault on a peace officer in violation of Ohio Revised Code section 2903.11(A)(2), (D)(1)(a) and the Ohio appellate court's holding on the sufficiency issues was not contrary to or an unreasonable application of federal law.

## VII.    PETITIONER'S MOTION FOR DEFAULT JUDGMENT

Petitioner also moves the Court to render default judgment against Respondent pursuant to Rule 55 of the Federal Rules of Civil Procedure due to Respondent's alleged failure to respond "within fifteen (15) days from the filing of petitioner's reply brief as specified in Local Rules of the U.S. District Court-Northern District Petitions for Writ of Habeas Corpus (2254) Order Magistrate Judge George J. Limbert at (3)."  ECF Dkt. #9.

The undersigned recommends that the Court DENY Petitioner's motion for default judgment.  ECF Dkt. #9.  Respondent is not required to file any document after Petitioner files his Traverse.  Even a Traverse or Reply by Petitioner to Respondent's Return of Writ is not required by the Rules Governing § 2254 Cases.  *See* Rule 5 of Rules Governing § 2254 Cases,

28 U.S.C.A. Rules foll. §2254 and Advisory Committee's Notes following Rule 5. Accordingly, the undersigned recommends that the Court DENY Petitioner's motion for default judgment.  ECF Dkt. #9.

## VIII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice (ECF Dkt. #1) and DENY Petitioner's motion for default judgment (ECF Dkt. #9).


DATE: January 30, 2013                         */s/ George J. Limbert*
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).